**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| SHANTE WATSON, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br>v.<br><br>GEORGIA AUTO PAWN, INC.<br><br>Defendant. | Civil Case No.: 1:25-cv-00906-LMM |

# MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## I. INTRODUCTION

Plaintiff Shante Watson ("Plaintiff") and Defendant Georgia Auto Pawn, Inc. ("Defendant") have reached a class action settlement agreement ("Settlement Agreement" or "Agreement") that establishes a $525,000 non-reversionary common fund for the benefit of the Settlement Class. The Settlement resolves claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, arising from Defendant's alleged use of artificial or prerecorded voice calls to cellular telephone numbers belonging to individuals who were not the intended recipients of those calls.

The Settlement represents an excellent result for Settlement Class Members. The Settlement Class consists of Plaintiff and individuals associated with 568 additional cellular telephone numbers identified through expert analysis of Defendant's calling records. After payment of Court-approved attorneys' fees, litigation expenses, settlement administration costs, and Plaintiff's proposed general-release payment, approximately $255,000 is expected to remain available for distribution to participating Settlement Class Members. Assuming a 10% claims rate, each participating Settlement Class Member is estimated to receive approximately $4,500—a significant recovery for any impacted consumer. The actual recovery will depend on the number of approved claims and the amounts ultimately approved by the Court.

The Settlement is particularly favorable considering the substantial risks associated with litigating TCPA claims involving calls to wrong or reassigned cellular telephone numbers. Although Plaintiff maintains that Defendant's prerecorded calls violated the TCPA, Defendant denies liability and disputes whether the calls at issue were actionable. Continued litigation would require the Parties to address disputed issues concerning consent, the identification of persons who received the calls, and whether a litigation class could be certified and maintained through trial. The Settlement eliminates those uncertainties while providing substantial and immediate monetary relief to Settlement Class Members.

The Settlement also resulted from informed, arm's-length negotiations between experienced counsel, including mediation before Seamus Duffy. The Parties had the benefit of expert analysis identifying the telephone numbers underlying the proposed Settlement Class, permitting them to evaluate the scope of the alleged violations and the potential recovery available through continued litigation. Defendant does not oppose preliminary approval of the Settlement.

Through this Motion, Plaintiff respectfully requests that the Court: (1) preliminarily approve the Settlement as fair, reasonable, and adequate; (2) conditionally certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3); (3) appoint Plaintiff as Class Representative and Perrong Law LLC and Paronich Law, P.C. as Class Counsel; (4) approve the proposed Notice Plan and

Claim Form; (5) appoint Kroll Settlement Administration as Claims Administrator; and (6) schedule a Final Fairness Hearing.

## II. BACKGROUND

On February 20, 2025, Plaintiff filed this action alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA") by placing artificial or prerecorded voice calls to her cellular telephone without consent. ECF No. 1. Plaintiff alleged that she had no relationship with Defendant and repeatedly received prerecorded calls intended for another individual. *Id.* ¶¶ 11–16, 22–25. The action was initially filed against Carolina Title Loans, Inc., which was subsequently replaced by Georgia Auto Pawn, Inc. ECF Nos. 15–16.

The Parties engaged in substantial discovery concerning Defendant's prerecorded calling practices, consent procedures, and calling records. Plaintiff served written discovery, pursued third-party subpoenas to Onvoy, LLC, CompliancePoint, Inc., PossibleNOW Services, Inc., and LiveVox, Inc., and noticed Defendant's deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). Paronich Decl. ¶¶ 5–6.

Defendant's expert, Jan Kostyun, analyzed the relevant calling records and prepared a July 27, 2026 report identifying the telephone numbers included in the proposed Settlement Class. *Id.* ¶ 7; Settlement Agreement §§ 2.16, 4.3. For settlement purposes, the Parties agreed that the proposed Settlement Class

encompasses Plaintiff and individuals associated with 568 additional telephone numbers. Settlement Agreement § 4.3.

The Parties also participated in mediation before Seamus Duffy and, following informed, arm's-length negotiations, reached the proposed $525,000 non-reversionary Settlement Agreement. Paronich Decl. ¶¶ 9–10.

## III. SUMMARY OF THE SETTLEMENT TERMS

The following provides a summary and discussion of the Settlement's material terms.

### a. <u>The Settlement Class</u>

The Settlement Agreement defines the Settlement Class as:

> All persons throughout the United States including the Plaintiff and individuals (1) listed in Exhibit D of the report of Jan Kostyun, dated July 27, 2026, (2) to whom Georgia Auto Pawn, Inc. placed a call, (3) directed to a telephone number assigned to a cellular telephone service, (4) in connection with which Georgia Auto Pawn, Inc. used an artificial or prerecorded voice, (5) from February 20, 2021, through the Preliminary Approval Date.

Settlement Agreement § 2.16.

### b. <u>Settlement Consideration</u>

Defendant will establish a $525,000 non-reversionary Settlement Fund. The fund will pay approved class member claims, notice and administration expenses, any attorneys' fees and litigation expenses awarded by the Court, and Plaintiff's separately negotiated individual release payment. No portion of the Settlement Fund will revert to Defendant.

Class Counsel intend to request attorneys' fees of $175,000 and reimbursement of litigation expenses not exceeding $40,000. Plaintiff will also seek a $5,000 payment in exchange for providing an individual general release broader than the release applicable to absent class members. Settlement administration expenses are estimated at approximately $50,000.

**c. <u>Settlement Administration and Notice</u>**

The Parties propose Kroll Settlement Administration LLC as Settlement Administrator. Kroll will use the telephone numbers identified in the Settlement Class to conduct reverse-lookup research to identify potential class members and their mailing addresses. It will then disseminate the Court-approved postcard notice and claim form by mail.

The notice program will also include a dedicated settlement website containing the long-form notice, Settlement Agreement, and information regarding the claims process, as well as a toll-free telephone number through which class members may obtain additional information. Notice will commence within 30 days after entry of the Preliminary Approval Order.

The proposed notices explain the nature of the action, the Settlement Class definition, the monetary relief available, the method for submitting a claim, the rights to object or request exclusion, the effect of remaining in the Settlement Class, and the date of the Final Approval Hearing. Copies of the proposed long-form notice, postcard notice, and claim form are submitted with the Settlement Agreement.

**d. <u>Claims Process and Distribution</u>**

Settlement Class Members may submit a claim using the proposed claim form, including through the settlement website or by mail. The claims deadline will be 75 days after entry of the Preliminary Approval Order.

Each eligible Settlement Class Member may submit one claim, regardless of the number of prerecorded calls received. After payment of Court-approved fees, expenses, administration costs, and Plaintiff's individual release payment, the remaining Settlement Fund will be distributed among Settlement Class Members who submit valid claims.

Settlement checks will remain negotiable for 120 days. Any amounts attributable to uncashed checks will be distributed to the National Consumer Law Center as a *cy pres* recipient, subject to Court approval, rather than reverting to Defendant.

**e. <u>Exclusion and Objection Rights</u>**

Any Settlement Class Member who does not wish to participate in the Settlement may request exclusion by submitting a written request to the Settlement Administrator in accordance with the terms of the Settlement Agreement. The request must be personally signed by the Settlement Class Member and postmarked no later than the Opt-Out Deadline, which is 75 days after entry of the Preliminary Approval Order. Settlement Class Members who timely and properly exclude themselves will not receive any Settlement benefits and will preserve their rights to pursue individual claims against Defendant, subject to any defenses Defendant may

assert. Settlement Agreement § 12.

Any Settlement Class Member who wishes to object to the Settlement, including its terms, the requested attorneys' fees and expenses, or Plaintiff's individual release payment, must submit a written objection in accordance with the procedures set forth in the Settlement Agreement. The objection must identify the Settlement Class Member, state the grounds for the objection, and indicate whether the objector intends to appear at the Final Approval Hearing. Objections must be submitted no later than the Objection Deadline, which is 75 days after entry of the Preliminary Approval Order. Settlement Agreement § 13.

**f. Release of Claims**

In exchange for the settlement consideration, participating Settlement Class Members will release claims arising under the TCPA based on the artificial or prerecorded voice calls allegedly placed to their Settlement Class telephone numbers during the class period. The release is tailored to the conduct underlying this action and does not impose a general release of unrelated claims upon absent class members.

Plaintiff separately agrees to provide a broader individual general release in exchange for the proposed $5,000 payment. That additional consideration is distinct from the relief available to the Settlement Class.

**g. Attorneys' Fees, Expenses, and Final Approval**

Class Counsel will seek Court approval of attorneys' fees of $175,000, representing one-third of the Settlement Fund, together with reimbursement of litigation expenses not exceeding $40,000. Any award remains subject to the Court's

independent determination, and approval of the requested fees is not a condition of the Settlement.

## IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### a. The Legal Standard for Preliminary Approval

Under Federal Rule of Civil Procedure 23(e)(1)(B), a court should direct notice of a proposed class settlement where the parties demonstrate that the Court will likely be able to approve the settlement under Rule 23(e)(2) and certify the class for purposes of judgment. In evaluating a proposed settlement, the Court considers whether: (1) the class representative and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the relief provided to the class is adequate, considering the costs, risks, and delay of litigation; and (4) the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2).

The Eleventh Circuit has long recognized the strong judicial policy favoring settlement of class actions. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). At this stage, the Court need only determine whether it will likely be able to approve the Settlement and certify the proposed Settlement Class following notice and a final fairness hearing. Fed. R. Civ. P. 23(e)(1)(B).

### b. The Settlement Satisfies the Criteria for Preliminary Approval

Prior to formal class certification, a preliminary fairness determination is

appropriate "if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *De Cabrera v. Swift Beef Co.*, 2020 U.S. Dist. LEXIS 164615, at *13 (C.D. Cal. June 25, 2020); *see also Ross v. A.H. Robins Co.*, 700 F. Supp. 682, 683 (S.D.N.Y. 1988) ("A strong initial presumption exists in favor of a proposed settlement where the proponents establish that: (i) the settlement is not collusive …; (ii) the proponents have counsel experienced in similar cases; (iii) there has been sufficient discovery ….").

Each of the relevant factors weighs heavily in favor of preliminary approval of this Settlement. The Settlement resulted from informed, arm's-length negotiations following substantial discovery and mediation before Seamus Duffy. Paronich Decl. ¶¶ 5–7, 9–10. Class Counsel also evaluated the risks of continued litigation and determined that the Settlement is fair, reasonable, and adequate. *Id.* ¶¶ 11–13, 18–19. As explained below, the Settlement has no obvious deficiencies and does not improperly grant preferential treatment to any segment of the Settlement Class.

**i. The Settlement Agreement is the Product of Serious, Informed and Arm's Length Negotiations**

The Settlement resulted from informed, arm's-length negotiations following

substantial discovery and mediation before Seamus Duffy. Plaintiff served written discovery, pursued third-party subpoenas, and noticed Defendant's Rule 30(b)(6) deposition concerning Defendant's prerecorded calling practices, consent procedures, and calling records. Defendant's expert, Jan Kostyun, also analyzed the relevant calling records and identified the telephone numbers comprising the proposed Settlement Class. Paronich Decl. ¶¶ 5–7, 9.

Class Counsel evaluated the substantial risks of continued litigation, including Defendant's anticipated defenses, contested class certification, additional discovery, dispositive motions, trial, and potential appeals. *Id.* ¶¶ 11–13. Class Counsel's extensive experience prosecuting TCPA class actions further informed their assessment of the claims, defenses, and proposed Settlement. *Id.* ¶¶ 2–4, 21–22; Perrong Decl. ¶¶ 2–5.

The Settlement was thus negotiated at arm's length by experienced counsel with sufficient information to evaluate its fairness and adequacy. These circumstances strongly support preliminary approval under Rule 23(e)(2)(B). *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); Paronich Decl. ¶¶ 9–10, 19.

**ii. There Are No Obvious Deficiencies in the Settlement**

The Settlement provides substantial monetary relief to approximately 569 Settlement Class Members through a $525,000 non-reversionary common fund.

After anticipated deductions for attorneys' fees, litigation expenses, settlement administration, and Plaintiff's individual release payment, approximately $255,000 is expected to remain for distribution. Assuming a 10% claims rate, participating Settlement Class Members could receive approximately $4,500 each, a significant recovery compared to the TCPA's statutory damages of $500 per violation. The actual recovery will depend on the number of valid claims and Court-approved deductions. Paronich Decl. ¶¶ 14–15.

The Settlement also provides meaningful procedural protections, including direct mailed notice, a dedicated settlement website, and opportunities for Settlement Class Members to submit claims, request exclusion, or object. Settlement Agreement §§ 7, 11–13. All requested attorneys' fees, litigation expenses, and Plaintiff's individual release payment remain subject to independent Court approval, and the Settlement is not conditioned on approval of any particular fee award.

Finally, the release applicable to absent Settlement Class Members is limited to TCPA claims arising from the artificial or prerecorded voice calls at issue in this litigation. Plaintiff's broader individual release is supported by separate consideration. Settlement Agreement § 14. Accordingly, the Settlement contains no obvious deficiencies and provides substantial benefits while protecting Settlement Class Members' rights.

**iii. The Settlement Provides No Preferential Treatment**

The Settlement treats all Settlement Class Members equitably and does not improperly grant preferential treatment to Plaintiff or any segment of the Settlement Class. Rule 23(e)(2)(D) directs courts to consider whether a proposed settlement "treats class members equitably relative to each other." The Settlement satisfies this requirement because every participating Settlement Class Member is entitled to an equal, pro rata share of the Net Settlement Fund, regardless of the number of prerecorded calls received. Settlement Agreement § 11.

Finally, the Settlement does not favor any subset of the Settlement Class based on the timing of their calls, the number of calls received, or the amount of their potential statutory damages. All Settlement Class Members are subject to the same claims procedures, deadlines, and release provisions, and all have the same opportunity to exclude themselves from or object to the Settlement.

Accordingly, the Settlement treats Settlement Class Members equitably, provides no improper preferential treatment, and satisfies Rule 23(e)(2)(D).

#### iv. The Settlement Is Within the Range of Possible Approval

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own

judgment for that of counsel." *Id*. Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. *E.g., Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988). Courts recognize that the "essence of settlement is compromise," and a settlement need not represent a complete victory for the plaintiffs to be approved. *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996). Although the TCPA provides for statutory damages of $500 for each violation, it is well-settled that a proposed settlement may be acceptable even though it amounts to only a small percentage of the potential recovery that might be available to the class members at trial. *See, e.g., National Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). "The Court's function on this application is well known it is not to reopen and enter into negotiations with the litigants in the hope of improving the settlement to meet an objector's particular objections; nor is the Court called upon to substitute its business judgment for that of the parties who worked out a settlement after hard, arm's-length, good-faith bargaining. Rather, it is called upon to evaluate the probabilities of success upon a trial and to compare the benefits thereof with the terms of compromise." *Kuck v. Berkey Photo, Inc.*, 87 F.R.D. 75, 78 (S.D.N.Y. 1980).

Here, the monetary relief available on a per Settlement Class Member basis places the Settlement well within the range of possible approval. Paronich Decl. ¶¶ 14–15. Defendant will pay $525,000 into a non-reversionary common settlement

fund to resolve this matter. *Id.* ¶ 14. This amount is significant, particularly given the relatively small Settlement Class of approximately 569 individuals. Given the anticipated Settlement Class Member participation rate, the per-claimant recovery could be approximately $4,500, substantially exceeding the recoveries provided in numerous approved TCPA settlements. *Id.* ¶ 15; see, e.g., *Goldschmidt v. Rack Room Shoes*, No. 18-21220-CIV, slip op. (D.E. 86) (S.D. Fla. Jan. 16, 2020) (approving TCPA settlement providing a $10 voucher and $5 in cash, less attorneys' fees, costs, notice and administration costs, and service award, per claiming class member); *Halperin v. You Fit Health Clubs, LLC*, No. 18-61722, slip op. (D.E. 44) (S.D. Fla. Nov. 1, 2019) (approving TCPA settlement providing approximately $9 per claiming class member); *Cabiness v. Educ. Fin. Sols., LLC*, 2019 U.S. Dist. LEXIS 50817, at *12 (N.D. Cal. Mar. 26, 2019) ($33.36 per claimant); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ($34.60 per claimant).

Ultimately, any settlement requires the parties to balance the merits of the claims and defenses asserted against the risks of continued litigation and attendant delay. Paronich Decl. ¶¶ 11–13, 16–17. Plaintiff and Class Counsel believe that the claims asserted are meritorious and that Plaintiff would prevail if this matter proceeded to trial. Defendant denies liability and would continue to defend this action vigorously. The Parties recognize the substantial expense and length of continued proceedings necessary to prosecute this litigation through class

certification, summary judgment, trial, and potentially appeals. *Id.* ¶¶ 11–13. Class Counsel have also considered the strength of Defendant's anticipated defenses, the difficulties associated with obtaining class certification and proving liability on a classwide basis, the uncertain outcome of complex litigation, and the possibility that adverse developments in TCPA law could defeat or substantially limit Plaintiff's claims. *Id.* ¶¶ 12–13, 16–17.

Class Counsel believe that the proposed Settlement confers substantial and immediate monetary benefits upon the Settlement Class while eliminating the uncertainty, expense, and delay associated with continued litigation. Paronich Decl. ¶¶ 18–19. The Settlement provides participating Class Members with the prospect of recovering several thousand dollars each without the burden of prosecuting individual TCPA claims. *Id.* ¶ 15. Based on their evaluation of the evidence, the applicable law, the potential defenses, and the risks of continued litigation, Class Counsel have determined that the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class, whose members otherwise face the possibility of recovering nothing. *Id.* ¶¶ 16–19.

The Settlement satisfies each of the four factors generally considered in determining whether preliminary approval is appropriate. Accordingly, this Court should, consistent with the Eleventh Circuit's strong judicial policy favoring settlement, preliminarily approve the Settlement Agreement.

### c. Certification of the Settlement Class is Appropriate

In addition to preliminarily approving the Settlement, the Court should provisionally certify the proposed Settlement Class pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). Although the parties have reached a settlement, the Court must independently determine whether the requirements for class certification are satisfied. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In making that determination, however, the Court may consider that the proposed class is being certified solely for settlement purposes and that the difficulties associated with managing a class action through trial are not presented. *Id*. at 620.

The proposed Settlement Class consists of:

> All persons throughout the United States including the Plaintiff and individuals (1) listed in Exhibit D of the report of Jan Kostyun, dated July 27, 2026, (2) to whom Georgia Auto Pawn, Inc. placed a call, (3) directed to a telephone number assigned to a cellular telephone service, (4) in connection with which Georgia Auto Pawn, Inc. used an artificial or prerecorded voice, (5) from February 20, 2021, through the Preliminary Approval Date.

Settlement Agreement § 2.16.

As discussed below, the proposed Settlement Class satisfies the requirements of Rule 23(a), including numerosity, commonality, typicality, and adequacy of representation. The Class also satisfies Rule 23(b)(3) because common questions concerning Defendant's prerecorded calling practices predominate over individualized issues, and resolution through a class settlement is superior to requiring hundreds of individuals to pursue separate TCPA claims.

Accordingly, the Court should provisionally certify the Settlement Class,

appoint Plaintiff Shante Watson as Class Representative, and appoint Anthony I. Paronich of Paronich Law, P.C., and Andrew Perrong of Perrong Law LLC as Class Counsel for settlement purposes.

**1. The Settlement Class Satisfies Rule 23(a)**

Rule 23(a)(1) requires that the proposed class be sufficiently numerous that joinder of all members is impracticable. Although there is no fixed numerical threshold, the Eleventh Circuit has recognized that classes exceeding forty members generally satisfy the numerosity requirement. *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, the proposed Settlement Class consists of approximately 569 individuals identified through expert analysis of Defendant's calling records. Settlement Agreement § 4.3. The Settlement Class is therefore sufficiently numerous that joinder would be impracticable, particularly given its nationwide scope. Rule 23(a)(1) is satisfied.

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. This requirement is satisfied where class members' claims depend upon a common contention capable of classwide resolution. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). A single common question may suffice. Id. at 359. Here, the claims of Settlement Class Members arise from Defendant's alleged practice of placing artificial or prerecorded voice calls to cellular telephones. Common questions include whether Defendant employed an artificial or prerecorded voice in placing the challenged calls, whether those calls constituted violations of the TCPA, and whether Defendant's calling practices give rise to liability under 47 U.S.C. §

227(b)(1)(A)(iii).

These questions arise from the same alleged course of conduct and can be resolved through evidence concerning Defendant's calling systems, records, and practices. Moreover, the Settlement Class was identified through a common methodology applied to Defendant's calling records, further demonstrating the common factual basis underlying the claims. Rule 23(a)(2) is satisfied.

Rule 23(a)(3) requires that the claims of the representative party be typical of those of the class. Typicality is satisfied where the representative's claims arise from the same event, pattern, or practice and are based upon the same legal theory as the claims of absent class members. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984). The claims need not be identical; rather, there must be a sufficient nexus between the representative's claims and those of the class. *Id*. Plaintiff Shante Watson's claims are typical of those of the Settlement Class. Like the absent Settlement Class Members, Plaintiff alleges that Defendant placed artificial or prerecorded voice calls to her cellular telephone without the requisite consent, in violation of the TCPA. Her claims arise from the same alleged calling practices, involve the same statutory provision, and seek the same statutory remedies. Although individual circumstances surrounding particular calls may differ, those differences do not defeat typicality where the claims arise from the same alleged conduct and legal theory. Plaintiff's interests in establishing Defendant's liability and obtaining compensation are aligned with those of the Settlement Class. Rule 23(a)(3) is satisfied.

Rule 23(a)(4) requires that the representative party fairly and adequately

protect the interests of the class. This inquiry generally examines whether substantial conflicts of interest exist between the representative and absent class members and whether the representative and proposed class counsel will adequately prosecute the action. *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1189 (11th Cir. 2003). Both requirements are satisfied here. Plaintiff's interests are aligned with those of the Settlement Class because she seeks recovery for the same alleged TCPA violations. There is no apparent conflict between Plaintiff and absent Settlement Class Members concerning the claims being resolved. Plaintiff has also participated in prosecuting this litigation and has pursued relief on behalf of herself and similarly situated individuals. Paronich Decl. ¶ 20.

Proposed Class Counsel Anthony I. Paronich and Andrew Perrong are experienced attorneys who have litigated TCPA class actions and are familiar with the legal and factual issues presented by prerecorded calling claims. Paronich Decl. ¶¶ 2–4; Perrong Decl. ¶¶ 2–5. They have investigated Plaintiff's allegations, pursued written discovery and third-party subpoenas, obtained expert analysis of Defendant's calling records, and negotiated a substantial monetary settlement on behalf of the proposed Settlement Class. Paronich Decl. ¶¶ 5–7, 9–10, 21–22. Accordingly, Plaintiff and proposed Class Counsel will fairly and adequately protect the interests of the Settlement Class, satisfying Rule 23(a)(4).

**2. The Settlement Class Satisfies Rule 23(b)(3)**

In addition to satisfying Rule 23(a), the proposed Settlement Class meets the requirements of Rule 23(b)(3), which permits certification where "questions of law

or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Both requirements are satisfied here.

The predominance inquiry examines whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Although predominance is more demanding than the commonality requirement of Rule 23(a)(2), it does not require that every question be common to all class members. Rather, the inquiry focuses on whether common questions predominate over questions affecting only individual members. *Carriuolo v. Gen. Motors Co.,* 823 F.3d 977, 985 (11th Cir. 2016).

Here, the claims of Settlement Class Members arise from Defendant's alleged practice of placing artificial or prerecorded voice calls to cellular telephones in violation of 47 U.S.C. § 227(b)(1)(A)(iii). Common questions include whether Defendant used an artificial or prerecorded voice to place the challenged calls, whether the calls were made to cellular telephone numbers, and whether Defendant's conduct violated the TCPA. These questions can be addressed through common evidence, including Defendant's calling records, calling practices, and the expert analysis used to identify the Settlement Class.

Importantly, the proposed Settlement Class is not defined by reference to

every person Defendant may have called. Rather, it is limited to individuals identified through Jan Kostyun's July 27, 2026 expert report. Settlement Agreement §§ 2.16, 4.3. This objective identification methodology substantially narrows the class and provides a common evidentiary foundation for determining membership.

Although Defendant may assert individualized defenses concerning consent or the circumstances surrounding particular calls, those potential issues do not outweigh the common questions presented by Defendant's alleged prerecorded calling practices for purposes of settlement certification. Moreover, because certification is sought solely for settlement purposes, the Court need not consider whether individualized issues would create difficulties in managing a trial. *Amchem,* 521 U.S. at 620. Accordingly, common questions predominate over individualized issues, satisfying Rule 23(b)(3).

Rule 23(b)(3) also requires that a class action be superior to other available methods for fairly and efficiently resolving the controversy. Relevant considerations include the class members' interests in individually controlling separate actions, the extent of existing litigation, the desirability of concentrating the claims in a single forum, and the likely difficulties of managing a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D). Here, class treatment is plainly superior to requiring approximately 569 individuals to pursue separate TCPA actions against Defendant. Although the TCPA provides statutory damages of $500 per violation, the expense and burden of

individual litigation would likely discourage many Settlement Class Members from pursuing their claims. A class action permits these claims to be resolved collectively, conserving judicial resources and providing compensation to individuals who might otherwise obtain no recovery.

The Settlement also provides a particularly efficient method of resolution. Rather than requiring hundreds of separate proceedings concerning Defendant's prerecorded calling practices, the Settlement establishes a single, non-reversionary fund and a uniform claims process. Participating Settlement Class Members will receive equal pro rata payments from the Net Settlement Fund without having to establish liability or prove their damages through individual litigation.

Furthermore, the manageability concerns ordinarily associated with class certification are substantially diminished where, as here, certification is sought exclusively for settlement purposes. *Amchem*, 521 U.S. at 620. The proposed Settlement Class has been identified through expert analysis of Defendant's calling records, and the Settlement Administrator will implement a comprehensive notice and claims administration process. There is therefore no need to manage individual trials or adjudicate the merits of each Settlement Class Member's claim.

The proposed Settlement achieves the central purposes of Rule 23(b)(3) by providing an efficient, economical, and fair resolution of claims arising from a common course of conduct. Accordingly, a class action is superior to other available

methods of adjudication.

#### d. <u>The Court Should Approve the Proposed Notice Plan</u>

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Compl. Litig.*, § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950); *Manual for Compl. Litig.*, § 21.312.

The Supreme Court has recognized that individual notice must be provided to class members whose identities and addresses can be ascertained through reasonable effort. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–77 (1974). Due process similarly requires notice reasonably calculated to inform interested persons of the proceeding and afford them an opportunity to protect their interests. *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950).

Here, the proposed Notice Plan satisfies these requirements. Kroll Settlement Administration LLC, an experienced third-party settlement administrator, will conduct reverse-lookup research to identify mailing addresses associated with the telephone numbers belonging to Settlement Class Members. Kroll will then disseminate direct mailed notice to identified Settlement Class Members within thirty days after preliminary approval. Settlement Agreement § 7.

The Notice Plan also provides for a dedicated settlement website containing the Long Form Notice, Settlement Agreement, Claim Form, and other relevant information concerning the Settlement. A toll-free telephone number will be available to provide additional information. These measures supplement direct mailed notice and afford Settlement Class Members convenient means of learning about the Settlement and exercising their rights. *Id*.

The proposed notices explain the nature of the litigation, the Settlement Class definition, the monetary relief available, the procedures for submitting claims, and the rights to request exclusion or object. They also explain the consequences of remaining in the Settlement Class, including the release of claims upon final approval. Settlement Class Members will have seventy-five days following preliminary approval to submit claims, request exclusion, or object to the Settlement. Settlement Agreement §§ 11–13.

The Notice Plan is particularly appropriate given the relatively small and identifiable Settlement Class. Because the proposed class consists of approximately 569 individuals identified through analysis of Defendant's calling records, direct mailed notice, supplemented by a settlement website and toll-free telephone number, provides a reasonable and effective means of reaching Settlement Class Members. The Plan therefore satisfies Rule 23 and due process.

Accordingly, the Court should approve the proposed Notice Plan and the forms of notice submitted with the Settlement Agreement and direct Kroll to implement the Plan in accordance with the Settlement Agreement.

## V. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court should set a date and time for the Final Approval Hearing, and the other deadlines in the Settlement approval process. Class Counsel propose the following schedule:

| **Event** | **Date** |
|---|---|
| Defendant to fund Settlement Fund | 30 days after Preliminary Approval |
| Settlement Administrator to commence notice | Within 30 days after Preliminary Approval Order |
| Claims Deadline | 75 days after Preliminary Approval Order |
| Opt-Out Deadline | 75 days after Preliminary Approval Order |
| Objection Deadline | 75 days after Preliminary Approval Order |
| Class Counsel's motion for attorneys' fees and expenses | 45 days after Preliminary Approval Order |
| Motion for Final Approval | 90 days after Preliminary Approval Order |
| Final Approval Hearing | Approximately 100 days after entry of Preliminary Approval Order |

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order: (1) preliminarily approving the Settlement Agreement as fair, reasonable, and adequate; (2) provisionally certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3); (3) appointing Shante Watson as Class Representative and Anthony I. Paronich and Andrew Perrong as Class Counsel; (4) approving the proposed Notice Plan and forms of notice; (5) directing the Settlement Administrator to implement the Notice Plan; and (6) scheduling a Final Approval Hearing and establishing the related deadlines.

Dated: October 26, 2026

Respectfully Submitted:

*/s Anthony I Paronich*

Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
617 485-0018
anthony@paronichlaw.com